IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HUSSEIN SALEM MOHAMMED | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1645 (PLF) |
| | ) | |
| GEORGE W. BUSH, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.    I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.    I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Hussein Salem Mohammed that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _24 April 2006_

_____
Teresa A. McPalmer
CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 69 2

8 0 JAN 2005

FOR OFFICIAL USE ONLY

From:  Director, Combatant Status Review Tribunal

Subj:  **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 1015**

Ref:    (a) Deputy Secretary of Defense Order of 7 July 2004
        (b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #1015 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

14 Jan 05

MEMORANDUM

From:  Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 1015

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #27 of 9 December 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review
Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I
find that:

    a.  The detainee was properly notified of the Tribunal process and elected to participate.

    b.  The Tribunal was properly convened and constituted by enclosure (1).

    c.  The Tribunal substantially complied with all provisions of references (a) and (b).
    Note that some information in exhibit R-3 was redacted.  The FBI properly certified in
    exhibit R-2 that the redacted information would not support a determination that the
    detainee is not an enemy combatant.

    d.  The detainee requested a polygraph test that was administered upon him to be
    produced.  The president of the Tribunal granted the detainee's request.  Enclosure (2)
    explains the weight given to the polygraph test.  I see no reason that the Tribunal reached
    the wrong legal conclusion as explained in enclosure (2).

    e.  The Tribunal's decision that detainee #1015 is properly classified as an enemy
    combatant was unanimous.

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action
is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final

                                    Peter C. Bradford
                                    PETER C. BRADFORD
                                    LT, JAGC, USNR


UNCLASSIFIED

**Department of Defense**
**Director, Combatant Status Review Tribunals**

9 Dec 04

From:  Director, Combatant Status Review Tribunals

Subj:  APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #27

Ref:    (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

**MEMBERS:**

▓▓▓▓▓▓▓▓ Colonel, U.S. Army; President

▓▓▓▓▓▓▓▓ Lieutenant Colonel, U.S. Air Force; Member

▓▓▓▓▓▓▓▓ Lieutenant Colonel, U.S. Air Force; Member (JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy

# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

27 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander ICO ISN 1015

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ▆▆▆▆.

for

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

(U) **Combatant Status Review Tribunal Decision Report Cover Sheet**

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: ___#27___

(U) ISN#: ____1015__

Ref:  (a) Convening Order for Tribunal #27 of 9 December 2004 (U)
      (b) CSRT Implementation Directive of 29 July 2004 (U)
      (c) DEPSECDEF Memo of 7 July 2004 (U)

Encl:  (1) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
       (2) Classified Summary of Basis for Tribunal Decision (S//NF)
       (3) Summary of Detainee/Witness Testimony (U//FOUO)
       (4) Copies of Documentary Evidence Presented (S//NF)
       (5) Personal Representative's Record Review (U)

(U) This Tribunal was convened on 15 December 2004 by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

(U) The Tribunal has determined that Detainee #1015 is properly designated as an enemy combatant as defined in reference (c).

(U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, al Qaida, as more fully discussed in the enclosures.

(U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

Colonel, U.S. Army
Tribunal President

SECRET//NOFORN//X1

## UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#27_____
ISN #: _____1015_____

### 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal. Any classified evidence considered by the Tribunal is discussed in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is a member of al Qaida. The Detainee stated that he traveled from Yemen to Pakistan in September of 2001. The Detainee visited the Tabligh headquarters in Lahore, Pakistan. Jama'at Al Tablighi, a Pakistan based Islamic missionary organization is being used as a cover to mask travel and activities of terrorists including members of al Qaida. The Detainee stayed at the Tabligh center for two and a half months. The Detainee stayed at al-Qaida guesthouses in Afghanistan. The Detainee has been confirmed as being an old "JUNIOR" al-Qaida member. The Detainee was arrested in Tehran, Iran for illegally entering Iran.

The Detainee chose to participate in the Tribunal process. He called no witnesses, requested one classified document be produced, and made an oral, sworn statement. The Tribunal President ordered the classified document requested by the detainee to be produced and the Recorder complied. The Detainee, in his oral sworn statement, denied being a member of al Qaida. The Tribunal President's evidentiary and witness rulings are explained below.

### 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a, R-1 through R-14

    b. Testimony of the following persons: none

    c. Sworn statement of the detainee.

**UNCLASSIFIED/FOUO**

ISN #1015
Enclosure (1)
Page 1 of 3

### 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses be produced for the hearing.

The Detainee requested the following additional evidence be produced:

| Evidence | President's Decision | Produced? |
|---|---|---|
| copy of his polygraph test | reasonably available | yes* |

* The Personal Representative located this polygraph test and gave it to the Recorder to submit in the classified session of the Tribunal as Exhibit 14.

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

     a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

     b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee stated that that he was not an al Qaida member. He did travel from Yemen to Lahore, Pakistan in September of 2001. The Detainee stated that he did visit the Tabligh Center in Lahore and stayed with Jama'at Al Tablighi for approximately 2 ½ months. He had never been to Afghanistan prior to going to prison. He has never stayed at al Qaida guesthouses and has never been called an old "junior" al Qaida member. The Detainee was arrested in Tehran, Iran for illegally entering Iran. He stated that his original goal was to travel to Europe for human rights and opportunities not afforded him in Yemen. The Detainee went by plane and was traveling with a passport to Pakistan. From there, he arranged to be smuggled into Iran.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed appropriate although the Detainee did complain that he had a toothache and a sore throat that the Personal Representative said had been reported to the guards.

    b. The Detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

    c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with al Qaida.

### 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Army
Tribunal President

## Summarized Detainee Sworn Statement

*As the Tribunal opened, the Tribunal President made the following statement:*

*The Tribunal President read the Hearing Instructions to the Detainee and confirmed that the Detainee understood and commented:*

Detainee: In regards to secret or non-secret what is this for, secret or non-secret?

Tribunal President: We divide the information up into two parts: Unclassified, which we can show you and then we have Classified information which we deem important to National Security which we are not allowed to share with you. Do you have any questions concerning the Tribunal process?

Detainee: What am I going to benefit from this session, this Tribunal?

Tribunal President: This Tribunal is an impartial panel. To this point we have seen no information on you whatsoever. We will be looking at basically two things. The first thing we look at, of course, is the information the Recorder will provide to us. Since you have elected to participate today the second thing we will look at is your oral statement. Basically we look at that information to determine whether or not your enemy combatant status is an appropriate one for you. If we determine that you have not been properly classified that can lead to your release.

*The Personal Representative presented the Detainee Election Form (Exhibit D-A) to the Tribunal.*

*The Recorder presented the Unclassified Summary of Evidence (Exhibit R-1) to the Tribunal.*

*The Recorder presented Exhibit R-2 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

Detainee: You are impartial, is that right?

Tribunal President: The Tribunal panel? Yes, we haven't seen any information.

Detainee: So how did she (Tribunal President) know when he (Recorder) said that he didn't have any and she was telling him to read what he had down?

Tribunal President: He had already told me that he had classified and unclassified, that's all he said. I know he's got something else to present but I don't know what that is.

Detainee: No problem.

**The Tribunal President, referring to the Detainee Election Form, made the following statement:**

Tribunal President: I see by the Detainee Election Form that you have elected to participate today as evidenced by your being here. I also see that you asked your Personal Representative to locate some documentation for you that he will present to us in the classified session. Hussein Salem Mohammed you may now present any evidence that you have to the Tribunal and you have the assistance of your Personal Representative in doing so. Do you wish to present information to this Tribunal and would you like to make your statement under oath?

Detainee: Swearing or not swearing that is okay I have no problem with that. In which way will I swear?

Tribunal President: It will be the Muslim oath and the Recorder will provide the script.

**The Recorder administered the Muslim oath to the Detainee.**

**The Tribunal President opened the Tribunal to the Detainee to make his statement.**

Personal Representative: First item was the detainee was a member of al Qaida based on these seven statements. The first one is:

*3.a.1. The detainee stated that he traveled from Yemen to Pakistan in September of 2001.*

Detainee: I told you this. I gave you this information. I told you that I traveled to Yemen to Pakistan at this time. Is it an accusation to travel?

Tribunal President: It is just a statement.

Detainee: Nothing is included in these points that would lead to me becoming categorized as me being with al Qaida. This al Qaida thing is not (inaudible).

Tribunal President: That's the kinds of things we need to know from you.

Detainee: This talk of al Qaida has no foundation or any truth to it whatsoever. I wish that you'd understand me. Of course in regards to me traveling from Yemen to Pakistan, I volunteered that information. From Yemen to Pakistan I gave you this information, I volunteered this information. It's here and very easy to find it. You have your own conclusions and you can check with the Yemeni government and you will know where and when.

*3.a.2. The detainee visited the Tablighi headquarters in Lahore, Pakistan.*

Detainee: The way you put it, it looks like I went to visit and I was enjoying my visit with them. I told you before that my goal wasn't to visit these guys; I went there because my goal was to travel. That's why I went there.

Tribunal President: Keep in mind again, that we don't know any of the information you've already told interrogators or anything about you other than this one sheet of paper.

Detainee: I'm sorry. I didn't mean to be disrespectful or anything. I just wanted to mention that I told this information to the interrogators before.

Tribunal President: I appreciate that.

*3.a.3. Jama'at Al Tablighi, a Pakistan based Islamic missionary organization is being used as a cover to mask travel and activities of terrorists including members of al Qaida.*

Detainee: So am I responsible for that? Am I responsible for that? I'm asking you. If I was responsible then yes this statement would make sense but I'm not responsible for anybody.

*3.a.4. The detainee stayed at the Tablighi center for two and a half months.*

Detainee: I told you personally that. I stayed for two and half months, approximately I don't know exactly, but approximately two and half months. I didn't lie to you. I didn't tell you that I didn't stay there. I said yes I stayed there.

*3.a.5. The detainee stayed at al Qaida guesthouses in Afghanistan.*

Detainee: This statement I don't understand. This doesn't have any base to it because I've never been to Afghanistan. You guys, you took me to Afghanistan to the prison in Afghanistan. I didn't go. You took me. If you want to consider the period or the time in that prison as a charge or a crime then that's something else.

*3.a.6. The detainee has been confirmed as being an old "JUNIOR" al Qaida member.*

Detainee: This is a lie. This is a lie. When was I a member of al Qaida? I never heard of this. First of all, look at the dates I left Yemen and you will know that was the first time I left Yemen. I never left Yemen before that. You can look at the dates. This talk about al Qaida is all lies. You have the Yemeni intelligence, ask them.

*3.a.7. The detainee was arrested in Tehran, Iran for illegally entering Iran.*

Detainee: Also, I told you this, it is me who told you this. Are you responsible for Iran? People enter and go into other countries. In your own country you have a lot of people who are illegally in the United States. Everywhere in the world people enter illegally and smuggle to other places, everywhere. Is it just illegal for me to enter Iran illegally?

ISN# 1015
Enclosure (3)
Page 3 of 10

Tribunal President: Does that conclude your statement or is there anything else you would like to tell us?

Detainee: That's it really. If you want me to tell you my whole story I have no problem with that. I already told my whole story and I also told my PR and I'm ready to repeat my story if you want me to.

Tribunal President: Again, this is all we've seen about you so if you think it will help us we are certainly willing to listen.

Detainee: Okay so you want me tell my story since the first day I left Yemen until you brought me here?

Tribunal President: If you think it will help us figure out why they're thinking you're an enemy combatant.

Detainee: You mentioned that why they think that you are part of al Qaida. You said think. You just think. You have no proof. You're not certain really and you put me in jail and classify me as al Qaida just because you think I am but you're not really certain, just because I'm Arabic and Muslim?

Tribunal President: I said why somebody else has determined that you're an enemy combatant. We haven't made a decision yet. We will at some point.

Detainee: I've been in Afghanistan for a year and two months and in all this period I was actually interrogated only three times. Two in the beginning and the third time the interrogator told me explicitly that there is nothing against you, you are innocent, you are going to go, you are going to go. As I just said in the second interrogation, the interrogator told me that there is nothing, absolutely nothing against you and right after that I was taken from one jail to another jail. I stayed in the second jail for eight to ten months and nobody interviewed or interrogated me. After that another group of interrogators came and they said here is your file and they looked and they said well, your file is closed there is nothing really against you. This was in Kabul and as I mentioned, we stayed there for a little over a year and after that they took us to Bagram. In Bagram, again, the same group of interrogators told me that they were going to subject me to a polygraph and I said yes please. Don't even talk to me anymore until you give this polygraph to prove that I am not lying. If you prove that I'm lying, I want you to take me and shove me into the streets of Yemen and ask people. After that they used to tell me that they have doubts, they were not certain they just have some doubts. After the three interrogators told me okay let's take the poly. Again they had nothing against me and they took the poly and they all came and congratulated me and they said you passed, you're fine. (Inaudible) In the same session I took three polygraphs in the same sitting. When they came they were so happy and they said congratulations you really passed. At that time I couldn't really control my emotions and I started crying with joy because I was so happy. After that they came and they told me I was going to go Cuba. I said wait, you told me that I am innocent and I'm going to get out. They told me yes, you have to Cuba then in a month or two you will be released

UNCLASSIFIED//FOUO

from there. Now I've been here I really don't know how long. One year and a month, a year and eight months, I really lost track. Three years in prison that's not right, that's a lot. I talked to the interrogators for a long time, sometimes with witnesses. They keep changing interrogators on me. I see one one time and a month later another one, a month later another one, the only interrogator I met with a lot was the one I met with three times. All of them said the same thing. There is nothing against you, you are innocent, you are going to Cuba. I used to tell them that I'm just a street vendor and if you think that I'm against you and that I'm not innocent then please present me to court. They said no there is nothing against you, there will be no Tribunal. Specifically one particular female she told me I was one of the ones that didn't need a Tribunal or court because there is not much against me, I was going to be released without going to a Tribunal. Up until now there is no determination, no firm decision on my case, there was no Tribunal, no nothing.

Tribunal President: At this time we may have some questions for you. Would you be willing to answer some questions for us?

Detainee: Please, please I told you I'm ready to answer the questions of the board.

Tribunal President: Personal Representative do you have any questions for the detainee.

Personal Representative: Yes Ma'am.

Personal Representative's questions

    Q. You mentioned that your goal was to travel but you didn't mention where you wanted to go.

    A. I told you the story before but again my intention was to go to Europe. My goal was to go to Europe and live in Europe and apply for Alien Refugee Status. My intention was to go and surrender myself or give up myself to any European country that I could get to. My intention was to go to the government and give myself up to them.

Personal Representative: That's all I have.

Tribunal President: Recorder, do you have any questions for the Detainee?

Recorder: No Ma'am, I don't.

Detainee: Please, please make a decision on my case. All interviews and interrogations, questions, this. Please, please come to a conclusion in my case.

Tribunal President: Do any Tribunal members have any questions for the Detainee?

Tribunal Member: Yes Ma'am.

ISN# 1015
Enclosure (3)
Page 5 of 10

Tribunal Member's questions

Q. To make a decision in your case we have to look at what you said and look at other evidence. We don't know what that other evidence is going to say so we have to kind of guess if I want to ask you to address possible questions.

A. No problem you can ask.

Q. One of the questions I wanted to ask you is; is there any reason why someone would turn you in and say I know he's al Qaida?

A. I really don't know who would do that, but whoever said that he is a liar. To start with I am not part of al Qaida.

Q. He (Personal Representative) asked you why you wanted to travel and you said you wanted to go to Europe. Were you having any trouble in Yemen?

A. No, I don't have any personal problems really but you know the situation in Yemen. You know northern Yemen and southern Yemen and I am from southern Yemen and our rights are really not respected and we don't have many opportunities. Again one more time, you know the situation in Yemen especially in the southern part of Yemen you cannot work with the government, you cannot further your study or finish your study to have really good education. You know that everything that you need, you need groceries, you need money for anything and everything you want to do. Of course you know that the government that is controlling all of Yemen, the northern part and southern part of it, are from the northern part. You know that. You aware of course of the war that was in 1994 after the Yemeni union. As I mentioned our life in the southern part of Yemen is really hard. Everything you need you have to get, from groceries, you have to get money to be able to eat, for the simplest paper you go to the police for you're screwed whatever. If you don't give money you will not get it done. We are harassed and we are really badly treated. I can't really express this any further because you are aware, you know about this situation and of course the sun is so obvious you cannot cover it. This is so obvious and you're aware all of it.

Q. Actually I should be aware of it but I am not as current as I should be on current events. I don't mean to sound dumb, but do northern Yemen speak the same language and do you look the same as southern Yemen?

A. No we are exactly the same. They were two countries in the beginning not just one but we are just like any division in any country. Like we have Morocco and Nigeria separated. It's the same thing but we used to be two countries.

Q. Can ask your age and occupation? I know you said student, but is there anything that you do as a specialty?

A.  Yeah I really don't have a specific profession or trade but I used to do construction, selling things in the market, things like that.  Anything I would do, things in the metal shop, whatever.  Anything that I could find.

Q.  What is your age?

A.  I was born in 1977 so I should be twenty-seven.

Q.  You said the Yemeni government limited your education.  What education did you get?

A.  I finished high school.  I waited for three years to get my diploma, my certificate, so I could do something else with it.  They said no, if you want your certificate, official certificate, I was asked to give 86 thousand Yemeni Riyal.  I said why am I going to give that to you, why should I give them the money to get my own certificate.  They just wanted to get from me 86 thousand Riyal.  Just to give me a paper that I would put in the house so I didn't finish, that's why I didn't finish.

Q.  When you were arrested in Iran, did you have a weapon on you?

A.  No what am I going to be doing with a weapon?

Q.  Were you trained with a weapon?

A.  No, absolutely not.

Q.  I just have one last question.  Again this might sound dumb, but is your name common?  Are there a lot people with your same name?

A.  Yes, in Yemen lots of Hussein, a lot.

Q.  I want to try and understand his transfers in prison.  I understand he was arrested in Iran transferred to Pakistan then transferred to Afghanistan then transferred to Cuba.

A.  No, I was captured in Iran and I went straight to Afghanistan, I didn't go to Pakistan.

Q.  Is that right sir?

A.  That is right.

Q.  When you traveled did you fly, drive, walk when you were traveling like from Yemen to Pakistan?

A.   By plane.

Q. This is a repeat but you were traveling to Pakistan to get to Europe or to visit friends, vacation. I'm just trying to understand why Pakistan?

A. Yes I was going there to get to Europe but I don't have any friends or anything there.

Q. In number two you admitted that you went to the Tablighi Headquarters. Are you aware of its ties to al Qaida?

A. No, I don't even know al Qaida. I don't know, I never knew they had any relation to each other. I don't know.

Q. Then why did you visit the Tablighi Headquarters?

A. It's no problem, I'm going to repeat it again for maybe for the fourth millionth time. I stated it yes; really I will repeat it again. As you know Tablighi is the missionaries, they go everywhere in the world. My goal was to just travel with them, I really wasn't associated with them. I wanted just to use them to travel with them to get out.

Tribunal President's questions

Q. When you left Yemen I assume, well maybe I shouldn't assume, did you travel with a passport?

A. Yes. Sure, sure.

Q. Did you travel with anyone?

A. I traveled by myself, I had my own Visa and I got my own ticket, just by myself.

Q. That was another one of my questions. You paid for your own travel?

A. I paid for my own, yes.

Q. When you went to Jama'at Al Tablighi, did they assist you at all?

A. No, no. As soon as they told me that there is no travel, the guy that was translating he said there is no travel. After that it was over.

Q. You went from Pakistan then to Iran?

A. Yes, yes and that was my big mistake going from Pakistan to Iran because if I had gone back home none of this would have happened.

Q. I assuming then when you went to Iran you didn't have a Visa to go into Iran.

A. No, I was going illegally.

Q. Did you have plans beyond that? You got to Iran where were you heading to next?

A. As I said before, the translator, the guy who was in Pakistan, he said that there was no travel might as well go back to my country. Then he proposed an idea to me. He said well if you are going to Europe you can go illegally or you can go through the borders illegally and go to Iran then from Iran to Turkey then from Turkey to Greece and Greece is European country. When he said that I said okay that great.

Q. How were you proposing to travel there? I assuming you can't fly without a passport.

A. I told you, this is all being done illegally through the borders.

Q. Right, so how did you propose to go, by foot?

A. I am going with smuggler whoever, if you walk, I'll walk with you. If you take a car, I'll go in your car with you.

Q. If in fact you were released from here, where would you go, back to Yemen?

A. I would go directly to the house not just Yemen, directly to the house. After all this do you think I would go anywhere else?

Tribunal President: I would like to thank you for participating in this Tribunal today.

Detainee: Me too, I thank you very much.

Tribunal President: Hussein Salem Mohammed do you have any other evidence you want to present to this Tribunal?

Detainee: I have nothing else to say besides my story I told you since I lived here, since I traveled and my story in Yemen. Besides that I have nothing else.

*The Tribunal President confirmed with the Personal Representative that he has further evidence that he will submit during the classified portion of the Tribunal and that the Detainee had no previously approved witnesses to present to the Tribunal.*

Detainee: Again, I just want to mention one more time, all this classification this (inaudible) this witness, I'm telling you all these are lies this (inaudible). I'm going to tell you one more time what I said in all the interviews. The latest interrogator told me I was in Sheeshan (ph). When was I in Sheeshan (ph)? I don't know. After that he said I was in Russia. I don't know when. Another one told me I was in Jordan and they killed your friend in a car. I don't know about that. He asked me about Bosnia and something like

ISN# 1015
Enclosure (3)
Page 9 of 10

UNCLASSIFIED//FOUO

that. This talk does not stand in the earth. This is just my reply about we think or they think. So I just wanted to clarify.

*The Tribunal President explained the remainder of the Tribunal process to the Detainee and adjourned the open session.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

Colonel, U.S. Army
Tribunal President

# DETAINEE ELECTION FORM

|  |  |
|---|---|
| **Date:** | **11 Dec 04** |
| **Start Time:** | **1010** |
| **End Time:** | **1150** |

**ISN#:** ___1015___

**Personal Representative:** ▓▓▓▓▓▓▓▓▓▓ Major, USAF

**Translator Required?** YES          **Language?**          ARABIC

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** ____YES____

------------------------------------------------------------------------------

## Detainee Election:

[X]     **Wants to Participate in Tribunal**

[ ]     **Affirmatively Declines to Participate in Tribunal**

[ ]     **Uncooperative or Unresponsive**

## Personal Representative Comments:

Detainee #1015 was briefed on the CSRT process and he understood it. He elected to participate in his Tribunal and he will make a statement.

The Detainee did not request any witnesses because he is a man and he doesn't have to tell people where and why he goes places.

Detainee #1015 was cooperative during our Initial Interview yet he continuously stated that there is "no justice" at Camp Delta and with the CSRT process.

The detainee didn't have a lot to say specifically about the evidence in his case. He asked why it was a crime to travel to another country. I explained to him that it wasn't any individual item of evidence that meant he was a member of al Qaida but all the pieces of evidence as a whole that created the belief. The detainee said that all the evidence was fabricated information although it was true that he entered Iran without papers. He was captured in Iran, taken to Afghanistan and then sold to the Americans.

The detainee stated that he was given a polygraph test and was told that he had passed the test by the interrogation team. He requested that I find the polygraph results. The polygraph will be in the Classified Exhibits.

Personal Representative ▓▓▓▓▓▓▓▓▓▓▓▓▓

**UNCLASSIFIED//FOUO**

Exhibit D-a

UNCLASSIFIED

**Combatant Status Review Board**

TO:  Personal Representative

FROM:  OIC, CSRT (08 December 2004)

Subject:  Summary of Evidence for Combatant Status Review Tribunal – MOHAMMED, Hussein Salem

1.  Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2.  An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.  This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3.  The United States Government has previously determined that the detainee is an enemy combatant.  This determination is based on information possessed by the United States that indicates that he is a member of al Qaida.

    A.  The detainee is a member of al Qaida:

        1.  The detainee stated that he traveled from Yemen to Pakistan in September of 2001.

        2.  The detainee visited the Tablighi headquarters in Lahore, Pakistan.

        3.  Jama'at Al Tablighi, a Pakistan based Islamic missionary organization is being used as a cover to mask travel and activities of terrorists including members of al Qaida.

        4.  The detainee stayed at the Tablighi center for two and a half months.

        5.  The detainee stayed at al Qaida guesthouses in Afghanistan.

        6.  The detainee has been confirmed as being an old "JUNIOR" al Qaida member.

        7.  The detainee was arrested in Tehran, Iran for illegally entering Iran.

4.  The detainee has the opportunity to contest his designation as an enemy combatant.  The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

EXHIBIT R- 1

UNCLASSIFIED

pg 1 of 1

**Memorandum**

| | | |
|---|---|---|
| To | : | Department of Defense                     Date  12/08/2004 |
| | | Office of Administrative Review |
| | | for Detained Enemy Combatants |
| | | Capt. Charles Jamison, OIC, CSRT |
| From | : | FBI GTMO |
| | | Counterterrorism Division ▇▇▇▇▇▇ |
| | | Asst. Gen. Counsel ▇▇▇▇▇▇▇▇ |
| Subject | | REQUEST FOR REDACTION OF |
| | | NATIONAL SECURITY INFORMATION |
| | | ▇▇▇▇▇▇▇▇ |

        Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

  CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
  DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

        The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

        The following documents relative to ISN 1015 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/26/03
FD-302 dated 05/27/03
FD-302 dated 06/13/03

---

  [1]Redactions are blackened out on the OARDEC provided FBI document.

  [2]See Executive Order 12958

EXHIBIT R: **2**

*pg 1 of 2*

Memorandum from ██████████ to Capt. Charles Jamison
Re:  REQUEST FOR REDACTION, 12/08/2004

If you need additional assistance, please contact Asst. Gen.
Counsel ████████████████████████,
████████████████████████████     or IS ███████████████████████

pg 2 of 2

UNCLASSIFIED//FOUO

## Personal Representative Review of the Record of Proceedings

I acknowledge that on  December 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #1015.

_____ I have no comments.

_____ My comments are attached.

Major ███████████, USAF                    18 Dec 04
Name                                        Date


Signature

ISN #1015
Enclosure (5)

UNCLASSIFIED//FOUO